25-cv-1115 (RPK) (JRC)

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CHARLES SALDARRIAGA,

Plaintiff,

*-against-*

THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, SERGEANT DET. WILLIAM J. PLANETA, DET. ERIC BOLGER, DET. LEONARDO MOSCOSO, and OFFICER MOHAMMAD F. HOSSAIN,

Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

---

**MURIEL GOODE-TRUFANT**
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York, Planeta, Bolger, and Moscoso*
*100 Church Street*
*New York, N.Y. 10007*

*Michael Futral*
*Tel: (212) 356-1643*

*September 4, 2025*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

STANDARD OF REVIEW ..... 3

ARGUMENT

POINT I

ALL BUT ONE OF THE STATE LAW CLAIMS ARE TIME-BARRED. ..... 6

POINT II

PLAINTIFF'S FALSE ARREST CLAIM SHOULD BE DISMISSED BECAUSE PROBABLE CAUSE EXISTED ..... 8

A. Sgt. Planeta Had Probable Cause To Believe That Plaintiff Was Double-Parked ..... 9

B. Probable Cause Existed To Arrest Plaintiff For Possession Of Forged License Plates In Violation of New York Penal Law § 170.20 ..... 10

POINT III

PLAINTIFF'S MALICIOUS PROSECUTON CLAIM SHOULD BE DISMISSED ..... 12

A. Probable Cause Existed For Plaintiff's Criminal Prosecution ..... 12

B. Plaintiff Fails To Allege The Proceeding Was Instituted With Malice ..... 14

POINT IV

PLAINTIFF'S ABUSE OF PROCESS CLAIM SHOULD BE DISMISSED ..... 15

**Page**

POINT V

PLAINTIFF'S UNLAWFUL SEIZURE OF PROPERTY CLAIM SHOULD BE DISMISSED ........ 16

A. Plaintiff Fails To State A Claim Against The City ........ 16

B. Plaintiff's Car Was Reasonably Seized Under The Community Caretaking Exception ........ 16

POINT VI

PLAINTIFF'S FAILURE TO INTERVENE CLAIM SHOULD BE DISMISSED ........ 18

POINT VII

PLAINTIFF'S EQUAL PROTECTION CLAIM IS DEFICIENT AND SHOULD BE DISMISSED ........ 20

A. Plaintiff Fails To State A Selective Enforcement Claim ........ 20

B. Plaintiff Fails to State A Claim On The Basis Of A Law, Statute, or Policy ........ 21

POINT VIII

PLAINTIFF'S TITLE VI CLAIM FAILS AND SHOULD BE DISMISSED ........ 23

A. Plaintiff Is Not An Intended Beneficiary Under Section 601 ........ 24

B. Plaintiff Fails To Plausibly Allege Intentional Discrimination ........ 24

POINT IX

PLAINTIFF'S *MONELL* CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED ........ 26

A. Plaintiff Failed To Establish An Underlying Constitutional Violation ........ 27

**Page**

B. Plaintiff Fails To Establish A *De Facto* Policy Or Practice ..... 27

A. Plaintiff Fails To Demonstrate Deliberate Indifference ..... 28

POINT X

THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ..... 31

A. Arguable Probable Cause Supported Plaintiff's Arrest ..... 32

B. Arguable Probable Cause Supported Plaintiff's Prosecution ..... 33

C. Defendants Are Entitled To Qualified Immunity From Plaintiff's Abuse Of Process Claim ..... 34

D. Sgt. Planeta Is Entitled To Qualified Immunity From Plaintiff's Seizure Of Property Claim ..... 34

E. Arguable Probable Cause Defeats Plaintiff's Failure To Intervene Claim ..... 34

F. Sgt. Planeta Is Entitled To Qualified Immunity From Plaintiff's Claims of Equal Protection Violations ..... 35

CONCLUSION ..... 35

WORD COUNT CERTIFICATION ..... 36

**Statutes** **Pages**

## TABLE OF AUTHORITIES

**Cases** **Pages**

*Alexander v. City of Syracuse*,
132 F.4th 129 (2d Cir. 2025) .................... 8

*Alharbi v. Miller*,
368 F. Supp. 3d 527 (E.D.N.Y. 2019) .................... 22

*Alvarez v. Cnty. of Orange, N.Y.*,
95 F. Supp. 3d 385 (S.D.N.Y. 2015) .................... 4

*Anonymous v. City of Meriden*,
No. 10-CV-37 (MPS), 2013 U.S. Dist. LEXIS 72678 (D. Conn. May 22, 2013) .................... 26

*Arroyo v. N.Y. State Ins. Dep't*,
No. 91 Civ. 4200 (MBM), 1995 U.S. Dist. LEXIS 15376 (S.D.N.Y. Oct. 16, 1995) .................... 24

*Ashcroft v. al-Kidd*,
563 U.S. 73 (2011) .................... 31

*Ashcroft v. Iqbal*,
556 U.S. 662 (2008) .................... 3, 4

*Ashley v. City of New York*,
992 F.3d 128 (2d Cir. 2021) .................... 8, 10

*Atwater v. City of Lago Vista*,
532 U.S. 318 (2001) .................... 9

*Bailey v. Tricolla*,
No. 94-CV-4597 (CPS), 1996 U.S. Dist. LEXIS 20067 (E.D.N.Y. Dec. 11, 1996) .................... 7

*Bartels v. Inc. Vill. of Lloyd Harbor*,
97 F. Supp. 3d 198 (E.D.N.Y. 2015) .................... 9

*Bell Atlantic Corp v. Twombly*,
550 U.S. 544 (2007) .................... 4

*Bermudez v. City of New York*,
790 F.3d 368 (2d Cir. 2015) .................... 12

*Betts v. Shearman*,
751 F.3d 78 (2d Cir. 2014) .................... 12

*Bibliotechnical Athenaeum v. Am. Univ. of Beirut*,
527 F. Supp. 3d 625 (S.D.N.Y. 2021) .................... 24

**Page**

*Blanco v. Success Acad. Charter Sch., Inc.*,
722 F. Supp. 3d 187 (S.D.N.Y. 2024) ........................................ 15

*Boddie v. City of New York, 15 Civ. 4275*
(GHW), 2016 U.S. Dist. LEXIS 50248 (S.D.N.Y. Apr. 13, 2016) .................. 29, 30

*Brannon v. Delta Airlines, Inc.*,
434 F. Supp. 3d 124 (S.D.N.Y. 2020) ........................................ 23, 24

*Brosseau v. Haugen*,
543 U.S. 194 (U.S. 2004) ........................................ 32

*Brown v. City of New York*,
798 F.3d 94 (2d Cir. 2015) ........................................ 10

*Brown v. City of Oneonta*,
221 F.3d 329 (2d Cir. 2000) ........................................ 22

*Buari v. City of New York*,
530 F. Supp. 3d 356 (S.D.N.Y. 2021) ........................................ 14

*Burgess v. DeJoseph*,
725 F. App'x 36 (2d Cir. 2018) ........................................ 13

*Calderon v. City of New York*,
138 F. Supp. 3d 593 (S.D.N.Y. 2015) ........................................ 28

*Caraballo v. City of New York*,
726 F. Supp. 3d 140 (E.D.N.Y. 2024) ........................................ 13

*Case v. City of New York*,
233 F. Supp. 3d 372 (S.D.N.Y. 2017) ........................................ 19

*Cash v. Cnty. of Erie*,
654 F.3d 324 (2d Cir. 2011) ........................................ 26

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ........................................ 5

*Cincotta v. Hempstead Union Free Sch. Dist.*,
No. 15-CV-4821 (ADS)(AKT), 2016 U.S. Dist. LEXIS 116478 (E.D.N.Y. Aug. 30, 2016)... 5

*City of Canton v. Harris*,
489 U.S. 378 (1989) ........................................ 26

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
473 U.S. 432 (1985) ........................................ 20

**Page**

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986) ........................................................................................................ 27

*Concepcion v. City of New York*,
No. 15-CV-4844 (AMD) (LB), 2019 U.S. Dist. LEXIS 76601 (E.D.N.Y. May 6, 2019) ..... 31

*Connick v. Thompson*,
563 U.S. 51 (2011) ............................................................................................ 16, 29, 30, 31

*Cook v. Sheldon*,
41 F.3d 73 (2d Cir.1994) ................................................................................................ 15

*Croke v. Cty. of Suffolk*,
No. 19-CV-4124 (DLI) (PK), 2021 U.S. Dist. LEXIS 180276 (E.D.N.Y. Sep. 21, 2021) ...... 7

*Delanuez v. City of Yonkers*,
No. 20 Civ. 4476 2022 U.S. Dist. LEXIS 196769 (S.D.N.Y. Oct. 28, 2022) ........................ 12

*Dellate v. Great Neck Union Free Sch. Dist.*,
No. CV 09-2567 (AKT), 2010 U.S. Dist. LEXIS 105015 (E.D.N.Y. Sep. 30, 2010) ............. 5

*Diarra v. City of New York*,
771 F. App'x 69 (2d Cir. 2019) ......................................................................................... 6

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010) ............................................................................................. 5

*Doe v. City of N.Y.*,
No. 18-CV-670 (ARR) (JO), 2018 U.S. Dist. LEXIS 134914 (E.D.N.Y. Aug. 9, 2018) ........ 5

*Dwares v. City of New York*,
985 F.2d 94 (2d Cir. 1993) ............................................................................................. 26

*Elliot-Leach v. New York City*,
201 F. Supp. 3d 238 (E.D.N.Y. 2016) ............................................................................... 5

*Felder v. Casey*,
487 U.S. 131 (1988) .......................................................................................................... 6

*Fontanez v. Skepple*,
No. 12 Civ. 1582 (ER), 2013 U.S. Dist. LEXIS 31720 (S.D.N.Y. Mar. 6, 2013) .................... 5

*Hawthorne by Hawthorne v. Cnty. of Putnam*,
492 F. Supp. 3d 281 (S.D.N.Y. 2020) .............................................................................. 34

*Garcia v. Does*,
779 F.3d 84 (2d Cir. 2015) ............................................................................................. 32

**Page**

*Gaston v. City of New York*,
851 F. Supp. 2d 780 (S.D.N.Y. 2012) ........................................................................ 13

*Gaston v. Ruiz*,
No. 17-CV-1252 (NGG) (CLP), 2018 U.S. Dist. LEXIS 112695 (E.D.N.Y. July 3, 2018) .... 5

*Gerasimou v. Cillis*,
No. 15-CV-6892 (EK)(VMS), 2022 U.S. Dist. LEXIS 6211 (E.D.N.Y. Jan. 12, 2022) ..... 19, 32, 33, 34, 32-35

*Gil v. Cnty. of Suffolk*,
590 F. Supp. 2d 360 (E.D.N.Y. 2008) ........................................................................ 33

*Greene v. City of New York*,
No. 08-CV-243 (AMD) (CLP), 2017 U.S. Dist. LEXIS 37243 (E.D.N.Y. Mar. 15, 2017) .. 20

*Guichardo v. Langston Hughes Queens Libr.*,
No. 15-CV-2866 (MKB), 2015 U.S. Dist. LEXIS 157894 (E.D.N.Y. Nov. 20, 2015) .......... 24

*Hardy v. New York City Health & Hosp. Corp.*,
164 F.3d 789 (2d Cir. 1999) ........................................................................................ 7

*Hazan v. City of New York*,
No. 98 Civ. 1716 (LAP) 1999 U.S. Dist. LEXIS 10499 (S.D.N.Y. July 9, 1999)..................... 6

*Hu v. City of New York*,
927 F.3d 81 (2d Cir. 2019) ........................................................................................ 20

*Hunter v. Bryant*,
502 U.S. 224 (1991) (per curiam) ................................................................................ 31

*Ikezi v. City of N.Y.*,
No. 14-CV-5905 (MKB), 2017 U.S. Dist. LEXIS 50742 (E.D.N.Y. Mar. 31, 2017) ...... 10-11

*Iosilevich v. City of New York*,
No. 22-CV-3714 (RPK) (LB), 2024 U.S. Dist. LEXIS 178098 (E.D.N.Y. Sep. 30, 2024)... 27, 29

*Jackson v. Suffolk County*,
87 F. Supp. 3d 386 (E.D.N.Y. 2015) ........................................................................... 34

*Jaegly v. Couch*,
439 F.3d 149–52 (2d Cir. 2006) .............................................................................. 8, 10

*Jean-Laurent v. Wilkinson*,
540 F. Supp. 2d 501 (S.D.N.Y. 2008) ........................................................................ 18

**Page**

*Jenkins v. City of New York*,
478 F.3d 76 (2d Cir. 2007) ... 1

*Kee v. City of New York*,
12 F.4th 150 (2d Cir. 2021) ... 8, 9, 14

*Keith v. City of New York*,
641 F. App'x 63 (2d Cir. 2016) ... 33

*Kelly v. Rice*,
375 F. Supp. 2d 203 (S.D.N.Y. 2005) ... 25

*Kurtz v. Hansell*,
664 F. Supp. 3d 438 (S.D.N.Y. 2023) ... 12

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011) ... 4, 5

*Lennon v. Miller*,
66 F.3d 416 (2d Cir. 1995) ... 31

*Lowth v. Town of Cheektowaga*,
82 F.3d 563 (2d Cir.1996) ... 13

*Lynch v. Ackley*,
811 F.3d 569 (2d Cir. 2016) ... 32

*Manganiello v. City of N.Y.*,
612 F.3d 149 (2d Cir. 2010) ... 14

*Mangino v. Inc. Vill. of Patchogue*,
808 F.3d 951 (2d Cir. 2015) ... 34

*Martin v County of Nassau*,
692 F. Supp. 2d 282, 2010 U.S. Dist. LEXIS 22989 (E.D.N.Y. 2010) ... 7

*Matthews v. City of New York*,
889 F. Supp. 2d 418 (E.D.N.Y. 2012) ... 19

*McCleskey v. Kemp*,
481 U.S. 279 (1987) ... 22

*McCrae v. Town of Brookhaven*,
759 F. Supp. 3d 372 (E.D.N.Y. 2024) ... 27, 29

*McLennon v. City of New York*,
171 F. Supp. 3d 69 (E.D.N.Y. 2016) ... 27

**Page**

*Monell v. Dep't of Soc. Servs. of City of New York*,
436 U.S. 658 (1978) ........................................................................ 26

*New York Urb. League, Inc. v. State of N.Y.*,
71 F.3d 1031 (2d Cir. 1995) ........................................................................ 24

*Nunez v. City of New York*,
735 F. App'x 756 (2d Cir. 2018) ........................................................................ 28

*Oklahoma City v. Tuttle*,
471 U.S. 808, n.8 (1985) ........................................................................ 26

*Palmer v. City of New York*,
564 F. Supp. 3d 221 (E.D.N.Y. 2021) ........................................................ 7, 16

*Palmer v. Thompson,*
403 U.S. 217 (1971) ........................................................................ 22

*Panetta v. Crowley*,
460 F.3d 388 (2d Cir. 2006) ........................................................ 10, 15

*Panzella v. City of Newburgh*,
231 F. Supp. 3d 1 (S.D.N.Y.) ........................................................................ 21

*Pearson v. Callahan*,
555 U.S. 223 (2009) ........................................................................ 31

*People v. Stephens*,
177 Misc. 2d 819, 676 N.Y.S.2d 905 (Crim. Ct. 1998) ........................................ 11

*Pers. Adm'r of Massachusetts v. Feeney*,
442 U.S. 256 (1979) ........................................................................ 22

*Plaintiffs v. Cty. of Suffolk*,
No. 15-CV-2431 (WFK) (LB), 2021 U.S. Dist. LEXIS 266386 (E.D.N.Y. Aug. 4, 2021).... 25

*Pluma v. City of New York*,
No. 13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134 (S.D.N.Y. Mar. 31, 2015) ............ 30

*Rafferty v. Hempstead Union Free Sch. Dist.*,
No. CV 18-3321 (ADS) (AYS), 2019 U.S. Dist. LEXIS 143200 (E.D.N.Y. Aug. 21, 2019).. 5

*Regeda v. City of New York*
No. 09-CV-5427 (KAM) (VVP), 2013 U.S. Dist. LEXIS 22313 (E.D.N.Y. Feb. 19, 2013) ... 6

*Reynolds v. Giuliani*,
506 F.3d 183 (2d Cir. 2007) ........................................................................ 29

**Page**

*Roberts v. City of New York*,
No. 16 Civ. 5409 (BMC), 2017 U.S. Dist. LEXIS 160979 (E.D.N.Y. Sep. 29, 2017) .......... 32

*Rose v. Cty. of Nassau*,
904 F. Supp. 2d 244 (E.D.N.Y. 2012) .......... 5-6

*Sanseviro v. New York*,
158 F. Supp. 3d 131 (E.D.N.Y. 2016) .......... 14

*Sauer v. Town of Cornwall*,
No. 20 Civ. 4881 (NSR), 2022 U.S. Dist. LEXIS 179284 (S.D.N.Y. Sep. 30, 2022) .......... 27

*Savino v. City of New York*,
331 F.3d 63 (2d Cir. 2003) .......... 15

*Seabrook v. City of New York*,
509 F. Supp. 2d 393 (S.D.N.Y. 2007) .......... 24

*Segal v. City of New York*,
459 F.3d 207 (2d Cir. 2006) .......... 29

*Smart v. City of New York*,
No. 08 Civ. 2203 (HB), 2009 U.S. Dist. LEXIS 30241 (S.D.N.Y. Mar. 30, 2009) .......... 9

*Smith-Hunter v. Harvey*,
95 N.Y.2d 191, 734 N.E.2d 750 (2000) .......... 14

*Stansbury v. Wertman*,
721 F.3d 84 (2d Cir. 2013) .......... 12

*TADCO Const. Corp. v. Dormitory Auth. of State of New York*,
700 F. Supp. 2d 253 (E.D.N.Y. 2010) .......... 14

*Thomas v. Genova*,
698 F. Supp. 3d 493 (E.D.N.Y. 2023) .......... 20-21, 35

*Tieman v. City of Newburgh*,
No. 13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015) .......... 28

*Tolbert v. Queens Coll.*,
242 F.3d 58 (2d Cir. 2001) .......... 24-25

*Udoh v. N.Y.C. Dep't of Prob.*,
No. 24 Civ. 03982 (ER), 2025 U.S. Dist. LEXIS 148391 (S.D.N.Y. Aug. 1, 2025) .......... 23

*United States v. Bernacet*,
724 F.3d 269 (2d Cir. 2013) .......... 9

**Page**

*United States v. City of New York*,
717 F.3d 72 (2d Cir. 2013) .......... 35

*United States v. Lyle*,
919 F.3d 716 (2d Cir. 2019) .......... 16, 17, 18

*United States v. Rivera*,
700 F. Supp. 3d 60 (S.D.N.Y. 2023) .......... 17

*Vessa v. City of White Plains*,
No. 12 Civ. 6989 (ER), 2014 U.S. Dist. LEXIS 42458 (S.D.N.Y. Mar. 27, 2014) .......... 5

*Vippolis v. Vill. of Haverstraw*,
768 F.2d 40 (2d Cir. 1985) .......... 26

*VW Credit Leasing LTD. v. Runway Towing Corp.*,
757 F. Supp. 3d 271 (E.D.N.Y. 2024) .......... 16-17

*Walker v. City of New York*,
No. 12 Civ. 5902 (PAC), 2014 U.S. Dist. LEXIS 42272 (S.D.N.Y. Mar. 18, 2014) .......... 28

*Weaver v. In Clerks Office City of New York*,
No. 13-CV-20 (CBA) (SMG), 2014 U.S. Dist. LEXIS 32036 (E.D.N.Y. Mar. 10, 2014) .......... 5

*Weyant v. Okst*,
101 F.3d 845 (2d Cir. 1996) .......... 8

*White v. Pauly*,
580 U.S. 73 (2017) (per curiam) .......... 31

*Wray v. City of New York*,
490 F.3d 189 (2d Cir. 2007) .......... 28

*Xifei Xu v. City of New York,*
No. 18 Civ. 1222 (RA), 2020 U.S. Dist. LEXIS 76287 (S.D.N.Y. Apr. 30, 2020) .......... 11

*Zalaski v. City of Hartford*,
723 F.3d 382 (2d Cir. 2013) .......... 32

*Ziming Shen v. City of New York*,
725 F. App'x 7 (2d Cir. 2018) .......... 12

**Constitutional Provisions**

U.S. Const. amend. XIV, § 1 .......... 20

**Page**

**Statutes**

42 U.S.C. § 1983 .......... 8, 14, 15, 16, 18

42 U.S.C. § 2000d .......... 23, 24

N.Y. Gen. Mun. Law § 50-h .......... 4

N.Y. Gen. Mun. Law § 50-i .......... 6

N.Y. Gen. Mun. Law § 50-e .......... 6

N.Y. Penal Law § 170.20 .......... 3, 10, 11, 12, 13

N.Y. Veh. & Traf. Law § 1202 .......... 9, 10

**Regulations**

34 RCNY § 4-08(f)(1) .......... 9, 10

## PRELIMINARY STATEMENT

On March 27, 2024, *pro se* Plaintiff, Charles Saldarriaga, was arrested for possession of forged license plates during a traffic stop. Plaintiff now brings this action challenging the events surrounding his arrest and prosecution. Those claims, along with all of Plaintiff's other state and federal claims, are legally unfounded and should be dismissed.

Defendants City of New York ("City"), New York City Police Department ("NYPD"),[1] Sergeant Detective William J. Planeta, Detective Eric Bolger, Detective Leonardo Moscoso, and Officer Mohammad Hossain ("Defendants") move to dismiss all claims in Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff asserts claims under Title VI and under 42 U.S.C. § 1983 for false arrest, malicious prosecution, unlawful seizure of property, equal protection violations, abuse of process, failure to intervene, and municipal liability. Plaintiff also brings parallel claims under New York state law and a claim for intentional infliction of emotional distress.

The Complaint should be dismissed with prejudice on the grounds that: (1) Plaintiff's state law claims are time-barred; (2) Plaintiff's arrest and prosecution were supported by probable cause; (3) the seizure of Plaintiff's vehicle was reasonable; (4) Plaintiff fails to allege any collateral objectives; (5) Defendants Moscoso and Hossain did not observe the conduct leading up to Plaintiff's arrest; (6) Plaintiff's equal protection, Title VI, and *Monell* claims are deficient; and (7) the individual Defendants are entitled to qualified immunity.

---

[1] The New York City Police Department is an improperly named defendant and cannot be sued. *See e.g., Jenkins v. City of New York*, 478 F.3d 76, 93 n. 19 (2d Cir. 2007) (explaining that the New York City Police Department, an agency of a municipality, is a non-suable entity).

## STATEMENT OF FACTS

On March 27, 2024, at approximately 1:45 p.m., Sergeant Detective William J. Planeta ("Sgt. Planeta") observed a green Range Rover, (Criminal Compl. at 1), double-parked with the ignition on, (50-h at 16), in front of 28-31 Steinway Street—a busy commercial street in Queens—displaying what appeared to be forged license plates. (Compl. ¶¶ 36-37, 55, 124). Sgt. Planeta activated his emergency lights, exited his vehicle, and approached the vehicle from behind, where he observed Plaintiff in the driver's seat with a passenger beside him. (Compl. ¶ 38). Plaintiff provided his driver's license, registration, and proof of insurance to Sgt. Planeta, (Compl. ¶ 39), who then returned to his car to run Plaintiff's information, (50-h at 20).

During this time, Plaintiff found the unmarked police car and allegedly inadequate NYPD insignia concerning and called the NYPD "at least seven times." (Compl. ¶ 40). As a result, the NYPD dispatched Defendants Detective Leonardo Moscoso ("Det. Moscoso") and Police Officer Mohammad F. Hossain ("P.O. Hossain") to the scene. (Compl. ¶ 41).

Sgt. Planeta returned to Plaintiff's car, ordered him out of the vehicle, (Compl. ¶ 42), and questioned him about his car and the license plates, (50-h at 23). Plaintiff stated that he owned the car and had purchased the license plates from the Department of Motor Vehicles ("DMV"). (50-h at 20; Criminal Compl. at 2). However, based on his training and the plates' appearance, Sgt. Planeta concluded that Plaintiff's license plates were forged. (Criminal Compl. at 1).

The Criminal Complaint, which reflects Sgt. Planeta's findings, specifies that Plaintiff's license plates: (1) were black, "whereas an authentic New York state plate background would not be;" (2) had circular "mounting holes … whereas an authentic New York license plate would have oblong mounting holes;" and (3) had "raised" lettering, "whereas the lettering on an authentic New

York [S]tate license plate would be flat." (Crim. Compl. at 1).[2] As a result, Sgt. Planeta handcuffed Plaintiff and placed him in a patrol car. (Compl. ¶ 44).

After, Sgt. Planeta returned to the Range Rover to see if Plaintiff's passenger "could move the vehicle." (Compl. ¶ 44). The passenger, however, "lacked a valid driver's license" and could not do so. (Compl. ¶ 44). Given the traffic and safety hazard of Plaintiff's car remaining double-parked on Steinway Street, Sgt. Planeta drove Plaintiff's car to the 114th Precinct, where Plaintiff was also transported. (Compl. ¶¶ 45-46).

At the Precinct, Plaintiff spoke to Defendant Detective Eric Bolger ("Det. Bolger") and learned that Det. Bolger would be listed as the arresting officer. (Compl. ¶¶ 48-49). Shortly after, Plaintiff was transported to central booking, where he had an anxiety attack. (Compl. ¶¶ 51, 53). He was then taken to Mount Sinai Hospital, where he was medically cleared before being transported back to central booking. (Compl. ¶ 54).

On March 28, 2024, Plaintiff was arraigned and charged with Possession of a Forged Instrument in the Third Degree under New York Pen. Law. § 170.20. (Compl. ¶ 55). Plaintiff alleges that, at an unspecified time, he provided someone with documentation, including a "receipt from the DMV," in an effort to demonstrate the "legality of the plates."[3] (Compl. ¶¶ 56-57). However, Plaintiff's criminal case was later dismissed on speedy-trial grounds. (Compl. ¶ 60).

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

---

[2] *See also* Personalized Plate Numbers, N.Y. State Dep't of Motor Vehicles, https://dmv.ny.gov/plates/personalized-plate-numbers (last visited August 27, 2025) (stating that the lettering on all New York license plates, including those with personalized lettering combinations, are "manufactured flat.").

[3] Plaintiff does not specify any identifying information of the person to whom who he provided these documents.

662, 678 (2008) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*

Two principles determine whether a complaint survives a motion to dismiss. First, the "tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. Rule Civ. Proc. 8(a)(2)).

On a motion to dismiss, courts consider the complaint, "'any written documents attached to [it], and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citations omitted); *see also Alvarez v. Cnty. of Orange, N.Y.*, 95 F. Supp. 3d 385, 397 (S.D.N.Y. 2015) (collecting cases) (noting that several courts have also taken judicial notice of incident reports, arrest reports, police reports, and similar materials on a motion to dismiss, if not for the truth of their contents, but to establish their existence.).

"A complaint is [also] deemed to include any written instrument attached to it as an exhibit [or] materials incorporated in it by reference." *L-7 Designs, Inc.*, 647 F.3d at 422. Courts within this Circuit routinely consider a plaintiff's 50-h transcript, obtained pursuant to New York's General Municipal Law § 50-h, on a motion to dismiss where the complaint explicitly references

the plaintiff's 50-h hearing, or even where it does not. *See e.g., Elliot-Leach v. New York City*, 201 F. Supp. 3d 238, 242 (E.D.N.Y. 2016) (50-h transcripts "routinely considered" on motion to dismiss); *see also Rafferty v. Hempstead Union Free Sch. Dist.*, No. CV 18-3321 (ADS) (AYS), 2019 U.S. Dist. LEXIS 143200, *7 (E.D.N.Y. Aug. 21, 2019); *Cincotta v. Hempstead Union Free Sch. Dist.*, No. 15-CV-4821 (ADS)(AKT), 2016 U.S. Dist. LEXIS 116478, at *23 (E.D.N.Y. Aug. 30, 2016); *Vessa v. City of White Plains*, No. 12 Civ. 6989 (ER), 2014 U.S. Dist. LEXIS 42458, at *17 n.11 (S.D.N.Y. Mar. 27, 2014), *aff'd*, 588 F. App'x 9 (2d Cir. 2014); *Dellate v. Great Neck Union Free Sch. Dist.*, No. CV 09-2567 (AKT), 2010 U.S. Dist. LEXIS 105015, at *13 (E.D.N.Y. Sep. 30, 2010) (citations omitted), *aff'd sub nom. Dellatte v. Great Neck Union Free Sch. Dist.*, 448 F. App'x 164 (2d Cir. 2012), *as amended* (Jan. 24, 2012).[4]

Even where documents are not incorporated by reference, courts may still consider them where they "are 'integral' to the complaint." *L-7 Designs, Inc.*, 647 F.3d at 422 (citations omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A document is integral to a complaint when the complaint "relies heavily upon its terms and effect." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Accordingly, "[w]here a notice of claim is not provided by a plaintiff, but a copy of which is supplied by defendants, the court may properly consider it." *Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 248 (E.D.N.Y. 2012) (explaining, where "[t]he Plaintiff did not provide the Court with an actual copy of the notice of claim," that "the Court

---

[4] This Court has suggested that "the greater weight of authority in the circuit excludes 50-h hearing testimony from consideration on a motion to dismiss." *Doe v. City of N.Y.*, No. 18-CV-670 (ARR) (JO), 2018 U.S. Dist. LEXIS 134914, at *12 (E.D.N.Y. Aug. 9, 2018) (collecting cases). Critically, however, none of the three cases relied upon in *Doe* involved a complaint that referenced 50-h testimony or a 50-h hearing. *See e.g., Gaston v. Ruiz*, No. 17-CV-1252 (NGG) (CLP), 2018 U.S. Dist. LEXIS 112695, at *9 (E.D.N.Y. July 3, 2018) (plaintiff's complaint "contain[ed] no mention of the 50-h transcript"); *Weaver v. In Clerks Office City of New York*, No. 13-CV-20 (CBA) (SMG), 2014 U.S. Dist. LEXIS 32036, at *10 (E.D.N.Y. Mar. 10, 2014) (plaintiff did "not refer[] to her 50-h testimony in the complaint"); *Fontanez v. Skepple*, No. 12 Civ. 1582 (ER), 2013 U.S. Dist. LEXIS 31720, *1 (S.D.N.Y. Mar. 6, 2013) (same). In contrast, Plaintiff here expressly references his 50-h testimony in his Complaint. (*See* Compl. ¶ 13).

necessarily must rely on the one provided by the Defendants"); *see also Regeda v. City of New York*, No. 09-CV-5427 (KAM) (VVP), 2012 U.S. Dist. LEXIS 186256, at *37 n.7 (E.D.N.Y. Sep. 7, 2012) (explaining that a notice of claim may be considered because, "as a precondition to bringing a tort claim against the city," it is an "integral part of the complaint") (citations omitted), *report and recommendation adopted*, No. 09-CV-5427 (KAM) (VVP), 2013 U.S. Dist. LEXIS 22313 (E.D.N.Y. Feb. 19, 2013); *Hazan v. City of New York*, No. 98 Civ. 1716 (LAP), 1999 U.S. Dist. LEXIS 10499, at *18 (S.D.N.Y. July 9, 1999).

Here, in addition to the Complaint, the Court may consider the Criminal Complaint ("Crim. Compl."), (annexed to Futral Decl. as Exhibit "A"), as it is integral and explicitly referenced numerous times throughout Plaintiff's Complaint, (*see* Compl. ¶¶ 30, 48, 82, 123, 191). Likewise, the Court may also consider Plaintiff's Notice of Claim, (annexed to Futral Decl. as Exhibit "B"), as Plaintiff explicitly references it and it is integral to his Complaint, (*see* Compl. ¶¶ 11-15). Finally, the Court may also consider Plaintiff's 50–h hearing transcript ("50-h Transcript"), (annexed to Futral Decl. as Exhibit "C"), as it is available to all parties and explicitly referenced in Plaintiff's Complaint, (*see* Compl. ¶¶ 12-13).

## ARGUMENT

### POINT I

### ALL BUT ONE OF THE STATE LAW CLAIMS ARE TIME-BARRED

"Under New York law, a notice of claim is a condition precedent" to bringing an action in state or federal court against a municipality or any of its officers, agents, or employees. *See* Gen. Mun. Law §§ 50-e, 50-i(1)(a); *Diarra v. City of New York*, 771 F. App'x 69, 71 (2d Cir. 2019); *see also Felder v. Casey*, 487 U.S. 131, 151 (1988). New York's notice-of-claim statute requires that plaintiffs asserting state tort claims against a municipality or its employees must, *inter alia*,

"file a notice of claim within 90 days of the incident that gives rise to the claim." *Palmer v. City of New York*, 564 F. Supp. 3d 221, 241 (E.D.N.Y. 2021) (citing New York Gen. Mun. Law §§ 50-e and 50-i); *see also Martin v County of Nassau*, 692 F. Supp. 2d 282, 2010 U.S. Dist. LEXIS 22989 (E.D.N.Y. 2010) (explaining that an arrestee's claims for false arrest, false imprisonment, negligence in training, supervising and discipline, negligent entrustment, and intentional infliction of emotional distress "accrue[d], at the latest upon release from jail.").

Notice of claim requirements are "construed strictly" by both state and federal courts. *See Hardy v. New York City Health & Hosp. Corp*., 164 F.3d 789, 794 (2d Cir. 1999); *Croke v. Cty. of Suffolk*, No. 19-CV-4124 (DLI) (PK), 2021 U.S. Dist. LEXIS 180276, at *23 (E.D.N.Y. Sep. 21, 2021). "'Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.'" *Palmer*, 564 F. Supp. 3d at 241 (citing *Diarra*, 771 F. App'x at 71); *see also Bailey v. Tricolla*, No. 94-CV-4597 (CPS), 1996 U.S. Dist. LEXIS 20067 (E.D.N.Y. Dec. 11, 1996) (dismissing plaintiff's state claims as time-barred for failure to comply with the notice of claim requirements). "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." *Id.* (citations omitted).

Here, all of Plaintiff's state law claims, with the exception malicious prosecution, are time-barred. Based on Plaintiff's allegations, the majority of his state law claims accrued on March 28, 2024, following his arraignment. (*See* Compl. ¶ 55). Plaintiff purports that he filed his Notice of Claim on June 24, 2024—88 days after his arraignment. (Compl. ¶ 12). However, his Notice of Claim receipt shows that he actually filed on July 19, 2024—113 days after his arraignment. (Notice of Claim at 1). Thus, Plaintiff's state law claims for false arrest or imprisonment, unlawful seizure and conversion of property, intentional infliction of emotional distress, negligent hiring,

training, and retention, abuse of power, and *respondeat superior* are time-barred, and must be dismissed.

**POINT II**

**PLAINTIFF'S FALSE ARREST CLAIM SHOULD BE DISMISSED BECAUSE PROBABLE CAUSE EXISTED**

To plead a claim for false arrest under § 1983,[5] a plaintiff must show that "(1) the defendant intended to confine [him], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citing *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021)).

Probable cause to arrest is a complete defense to a false arrest claim under both § 1983 and state law. *Id.* (citations omitted); *see also Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). When faced with a claim for false arrest, courts "focus on the validity of the arrest, and not on the validity of each charge." *Kee*, 12 F.4th at 158–59 (internal quotation marks and citations omitted). In other words, "[i]f there is probable cause to arrest a plaintiff 'for *any* crime—whether or not that particular crime was closely related to the offense the officers said was the reason for the arrest'—then a plaintiff cannot prevail" on a claim for false arrest. *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (emphasis in original) (quoting *Kee*, 12 F.4th at 158–59).

Here, Plaintiff's false arrest claim fails because Sgt. Planeta had probable cause to believe that Plaintiff was (A) illegally double-parked, and (B) in possession of forged license plates.

[5] "A § 1983 claim for false arrest ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted); *accord Jaegly v. Couch*, 439 F.3d 149, 151–52 (2d Cir. 2006).

**A. Sgt. Planeta Had Probable Cause To Believe That Plaintiff Was Double-Parked.**

The constitutionality of a Fourth Amendment seizure does not hinge on the severity of the criminal offense. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that an officer with "probable cause to believe that an individual has committed *even a very minor criminal offense*," such as a "misdemeanor seatbelt violation punishable only by a fine," may, "without violating the Fourth Amendment, arrest the offender") (emphasis added); *United States v. Bernacet*, 724 F.3d 269, 277 (2d Cir. 2013) (noting that the Supreme Court has held that even "traffic offenses" "can constitutionally support an arrest.").

Where the offense is a violation rather than a crime, it "must occur in the officer's presence to provide probable cause to arrest." *Kee*, 12 F.4th at 159. In all other respects, the probable cause analysis is the same regardless of whether the offense committed is a "violation" or a "crime." *See id*. (treating "reasonable cause" to commit a violation under New York law as equivalent to "probable cause" in the context of false arrest claims); *see also Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 215 (E.D.N.Y. 2015) (holding "that probable cause—or at least reasonable suspicion—existed" where an officer observed the plaintiff double-parked in violation of N.Y. Veh. & Traf. Law § 1200), *aff'd sub nom. Bartels v. Schwarz*, 643 F. App'x 54 (2d Cir. 2016); *Smart v. City of New York*, No. 08 Civ. 2203 (HB), 2009 U.S. Dist. LEXIS 30241, at *13 (S.D.N.Y. Mar. 30, 2009) (same); *see also* 34 RCNY § 4-08(f)(1) ("§ 4-08(f)(1)") (prohibiting "double parking"); N.Y. Veh. & Traf. Law § 1202(a)(1)(a) ("§ 1202(a)(1)(a)") (same).

Here, Sgt. Planeta reasonably believed Plaintiff was violating § 4-08(f)(1) and § 1202(a)(1)(a), and thus had probable cause to arrest him. As Plaintiff explains, he was in the driver's seat of his car, "double parked," and eating lunch, (50-h at 16, 18), in front of 28-31 Steinway Street, which is a "public area," (Compl. ¶¶ 36, 37). Thus, by his own account, Plaintiff was violating N.Y. Veh. & Traf. Law § 1202 and § 4-08(f)(1). Plaintiff also makes clear that Sgt.

Planeta directly observed him committing this violation as Sgt. Planeta "approached [Plaintiff] from behind" and "activated [his] … lights" "while Plaintiff was stationary." (*See* Compl. ¶¶ 37-38). Thus, probable cause existed and Plaintiff's false arrest claim fails.

**B. Probable Cause Existed To Arrest Plaintiff For Possession Of Forged License Plates In Violation of New York Penal Law § 170.20 ("§ 170.20").**

Where an offense committed by a plaintiff is a crime, the probable cause inquiry turns on "whether the facts known by the arresting officer[s] at the time of the arrest objectively provided probable cause to arrest." *See Jaegly*, 439 F.3d at 152-53 (explaining that "[a]n officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime"); *see also Ashley*, 992 F.3d at 136 (explaining that, to assess probable cause, a court considers the facts "available to the officer at the time of the arrest and immediately before it") (internal quotation marks omitted).

The collective knowledge doctrine permits arrests "where the actual arresting officer lacks the specific information to form the basis for probable cause but sufficient information to justify the arrest was known by other law enforcement officials initiating the investigation." *Brown v. City of New York*, 798 F.3d 94, 99 (2d Cir. 2015) (citation omitted). "When making a probable cause determination, police officers are entitled to rely on the allegations of fellow police officers." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted). The determination of probable cause does not turn on whether the fellow agent's observations were accurate, but on whether the arresting agent was reasonable in relying on those observations." *Id.*

An officer has probable cause under § 170.20 if a document's "physical characteristics" lead him to believe that an individual is knowingly in possession of a forged document. *See Ikezi v. City of N.Y.*, No. 14-CV-5905 (MKB), 2017 U.S. Dist. LEXIS 50742, at *35 (E.D.N.Y. Mar.

31, 2017) (citations omitted); *accord Xifei Xu v. City of New York*, No. 18 Civ. 1222 (RA), 2020 U.S. Dist. LEXIS 76287, at *6 (S.D.N.Y. Apr. 30, 2020) ("[B]ased on [the officer's] observation and training, the appearance of Plaintiff's Pennsylvania learner's permit," which bore text that had been whited out and stamped over, "was sufficient to establish probable cause for his arrest in violation of § 170.20."); *People v. Stephens*, 177 Misc. 2d 819, 676 N.Y.S.2d 905, 906-07 (Crim. Ct. 1998) (finding probable cause where officers observed a New Jersey license plate that "lacked an expiration date and solid edges on the top and bottom, and contained seals with uneven spacing and faded color.").

Here, according to the Criminal Complaint, Sgt. Planeta observed that Plaintiff's license plate: (1) was black with white lettering, "whereas an authentic New York license plate background would not be black in color;" (2) had circular "mounting holes … whereas an authentic New York license plate mounting holes are oblong;" and (3) had "raised" lettering, "whereas the lettering on an authentic New York state license plate would be flat." (Crim. Compl. at 1).

Further, when Sgt. Planeta asked Plaintiff where he obtained the license plates, Plaintiff claimed that he purchased them from the DMV and owned the vehicle. (Crim. Compl. at 2). However, because all New York license plates—including those with personalized lettering—are "manufactured flat,"[6] Plaintiff's statements were implausible, if not knowingly false.

Thus, based on the information available, it was objectively reasonable for Sgt. Planeta to believe that Plaintiff knowingly possessed forged license plates in violation of § 170.20, and for Det. Bolger, who was listed as the arresting officer, to rely on Sgt. Planeta's observations.

---

[6] *See e.g.,* Personalized Plate Numbers, N.Y. State Dep't of Motor Vehicles, https://dmv.ny.gov/plates/personalized-plate-numbers (last visited August 27, 2025).

Therefore, because there was probable cause to believe Plaintiff was violating § 170.20, Plaintiff's false arrest claim fails and must be dismissed.

**POINT III**

**PLAINTIFF'S MALICIOUS PROSECUTION CLAIM SHOULD BE DISMISSED**

To adequately state a malicious prosecution claim under § 1983 and New York Law, a plaintiff must plausibly allege "(1) the initiation or continuation of a criminal proceeding against him; (2) the termination of the proceeding in his favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Ziming Shen v. City of New York*, 725 F. App'x 7, 12 (2d Cir. 2018) (citing *Mitchell v. City of N.Y.*, 841 F.3d 72, 79 (2d. Cir. 2016)); *see also Bermudez v. City of New York*, 790 F.3d 368, 376 (2d Cir. 2015).

**A. Probable Cause Existed For Plaintiff's Criminal Prosecution.**

Like with false arrest, "probable cause is a complete defense" to a claim for malicious prosecution, *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014), but evaluated under a "slightly higher" standard, *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). In the context of a malicious prosecution claim, probable cause is "'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Kurtz v. Hansell*, 664 F. Supp. 3d 438, 452 (S.D.N.Y. 2023) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994)); *see also Delanuez v. City of Yonkers*, No. 20 Civ. 4476, 2022 U.S. Dist. LEXIS 196769, at *22 (S.D.N.Y. Oct. 28, 2022) ("The Second Circuit has clarified that 'probable cause' for a malicious prosecution claim means 'probable cause to believe that [the prosecution] could succeed'") (alterations in original) (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)).

Where '"probable cause to arrest exist[s] ... [and there are no] intervening facts between arrest and initiation of prosecution to undermine that probable cause, claims of malicious prosecution cannot survive."' *Caraballo v. City of New York*, 726 F. Supp. 3d 140, 160 (E.D.N.Y. 2024) (quoting *Powell v. Murphy*, 593 Fed. App'x 25, 28 (2d Cir. 2014)). In such circumstances, a plaintiff pursuing a malicious prosecution claim must "establish that probable cause somehow 'dissipated' between the time of arrest and the commencement of the prosecution." *Gaston v. City of New York*, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012) (citations omitted); *see also Burgess v. DeJoseph*, 725 F. App'x 36, 40 (2d Cir. 2018) (noting that "prosecution commences at arraignment") (citations omitted). "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir.1996).

Here, Plaintiff fails to plausibly allege a lack of probable cause for at least three reasons. First, as explained in Point II.B, *supra*, Sgt. Planeta had probable cause to arrest Plaintiff for violating § 170.20 based on direct observations of Plaintiff's license plates, training and experience, and conversations with Plaintiff.

Second, Plaintiff also fails to allege that he provided either Sgt. Planeta or Detective Bolger with the purported exculpatory evidence. While Plaintiff alleges that he provided "documentation" and a DMV receipt to show his plates were legally issued and registered to his vehicle, the Complaint lacks details as to exactly what the documentation consisted of, what information it showed, and, most crucially, exactly when, how, or to whom the information was given. (*See* Compl. ¶¶ 56-57). Even liberally construed, Plaintiff's allegations at best indicate that any "valid documentation" was presented only at arraignment, after the prosecution had already commenced. (*See* Compl. ¶¶ 55-57).

Third, Plaintiff also contends that the dismissal of his criminal case on speedy-trial grounds "confirm[s] the lack of legal or factual basis for the prosecution." (Compl. ¶ 158). However, that contention is misplaced. While such a dismissal satisfies the favorable termination element, it does not resolve the separate question of whether probable cause existed. *See e.g., Kee*, 12 F.4th at 166 (treating speedy-trial dismissal as favorable termination and probable cause as two separate issues); *see also Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 201–02, 734 N.E.2d 750, 757 (2000) (Rosenblatt, J. Concurring) ("most of the time, speedy trial dismissals … do not suggest … anything other than the fact that the time ran out.").

Thus, because Plaintiff fails to plausibly allege that probable cause was lacking, Plaintiff's malicious prosecution claims under New York law and § 1983 against the Sgt. Planeta and Detective Bolger must be dismissed.

**B. Plaintiff Fails To Allege The Proceeding Was Instituted with Malice.**

To adequately plead a claim for a malicious prosecution, a plaintiff must also allege malice for each defendant. *Manganiello v. City of N.Y.*, 612 F.3d 149, 160-61 (2d Cir. 2010). A plaintiff may satisfy this requirement by alleging "that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." *Id.* at 163. However, conclusory statements and unsubstantiated allegations of malice are insufficient to sustain a malicious prosecution claim. *See TADCO Const. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp. 2d 253, 271 (E.D.N.Y. 2010) ("malice requires pleading facts that show the defendant commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served"); *see also Sanseviro v. New York*, 158 F. Supp. 3d 131, 139 (E.D.N.Y. 2016), *aff'd*, 685 F. App'x 75 (2d Cir. 2017). Malice may be inferred where probable cause is "'totally lacking'" or through submission of false evidence. *Buari v. City of New York*, 530 F. Supp. 3d 356, 385 (S.D.N.Y. 2021) (citations omitted).

Here, Plaintiff fails to plausibly allege any improper motive. Rather, his allegation—that Defendants "acted with actual malice" by supposedly "using the criminal process to justify [his] false arrest and prolong his deprivation of liberty"—is conclusory. (Compl. ¶ 100).

Further, as shown in Points II and III.B, *supra*, probable cause was not "totally lacking" but reasonably grounded in Sgt. Planeta's training, firsthand observations, and conversations with Plaintiff—all of which Detective Bolger was entitled to rely on. *See Panetta*, 460 F.3d at 395. Thus, because Plaintiff fails to plausibly suggest malice, his malicious prosecution claims fails.

**POINT IV**

**PLAINTIFF'S ABUSE OF PROCESS CLAIM MUST BE DISMISSED**

To state an abuse of process claim, a plaintiff must establish that a defendant: "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quotation omitted). Under § 1983, a plaintiff must also show that the defendant deprived him of a constitutional right. *Cook v. Sheldon*, 41 F.3d 73, 79–80 (2d Cir.1994).

It is well recognized that, where "'an individual does no more than initiate and prosecute a criminal or civil action to its authorized conclusion, no abuse of process can be shown, regardless of the individual's malicious intent in doing so.'" *Blanco v. Success Acad. Charter Sch., Inc.*, 722 F. Supp. 3d 187, 223 (S.D.N.Y. 2024) (quoting *Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438, 449 (E.D.N.Y. 2012)). Likewise, "the pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim." *Id.* at 225.

Here, Plaintiff fails to adequately allege any collateral objective beyond his criminal prosecution. (Compl. ¶¶ 124-26). By Plaintiff's own account, each collateral purpose occurred

prior to Defendants "initat[ing] legal proceedings against him." (Compl. ¶ 122). Even assuming *arguendo* that Defendants acted with malicious intent to "harass and intimidate," such conduct would still be insufficient as it occurred prior to initiating legal proceedings against him. Thus, on this basis alone, Plaintiff's abuse of process claim fails and must be dismissed.

**POINT V**

**PLAINTIFF'S UNLAWFUL SEIZURE OF PROPERTY CLAIM MUST BE DISMISSED**

**A. Plaintiff Fails To State A Claim Against The City.**

Under § 1983, municipalities cannot be held vicariously liable on a *respondeat superior* theory for their employees' actions. *See e.g., Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Palmer*, 564 F. Supp. at 239-40 (E.D.N.Y. 2021) (dismissing municipal liability claim based on theory of vicarious liability in § 1983 action) (citations omitted). Thus, Plaintiff's attempt to hold the City liable on a theory of *respondeat superior* under § 1983 fails and must be dismissed. (*See* Compl. ¶¶ 103–11).

**B. Plaintiff's Car Was Reasonably Seized Under The Community Caretaking Exception.**

Under the Fourth Amendment, warrantless seizures '"are *per se* unreasonable ... unless they fall within one of several recognized exceptions."' *VW Credit Leasing LTD. v. Runway Towing Corp.*, 757 F. Supp. 3d 271, 284 (E.D.N.Y. 2024) (quoting *United States v. Casado*, 303 F.3d 440, 443 (2d Cir. 2002). One recognized exception is "what the Supreme Court has called community caretaking functions." *Id.* (citations omitted). "It is well established that police have the authority, despite the absence of a warrant, to seize and remove from the streets automobiles in the interests of public safety and as part of their community caretaking functions—an authority that is beyond reasonable challenge." *United States v. Lyle*, 919 F.3d 716, 728 (2d Cir. 2019). Under the community caretaking exception, police officers may properly "exercise their discretion

in deciding whether to impound a vehicle" where doing so is objectively reasonable "based on all the facts and circumstances of a given case." *Id.* at 728, 731; *see also United States v. Lopez*, 547 F.3d 364, 369 (2d Cir. 2008) (explaining that community caretaking impoundments require only a showing of reasonableness—not probable cause).

The Second Circuit has identified several factors to determine objective reasonableness in this context, including: (1) the availability of a third party to entrust with the vehicle's safekeeping; (2) the length of time the vehicle would be left unattended; (3) whether the vehicle would become illegally parked if left unattended; (4) the risk of the vehicle being stolen, damaged, or becoming a nuisance if left unattended; and (5) whether the vehicle was parked in a public or private space. *Lyle*, 919 F.3d at 731. The Second Circuit has also cautioned that, "[w]hile the existence of an officer's adherence to [ ] standardized criteria" may be a factor in evaluating the reasonableness of an impoundment, officers are not required to use "a standardized impoundment procedure." *Id.*; *see also United States v. Rivera*, 700 F. Supp. 3d 60, 74 (S.D.N.Y. 2023) ("decisions to impound and inventory-search that otherwise are reasonable 'will not be rendered unreasonable merely because an officer is motivated in part by investigatory purposes or by the expectation that the search will yield evidence.'") (citations omitted).

Applying these factors, courts have consistently found that decisions to impound vehicles were proper under the Fourth Amendment. For instance, in *Rivera*, the Court held that the decision to impound a van was objectively reasonable where no third party was "immediately available to entrust with the vehicle's safekeeping," officers "could not be certain how long the [van] would be unattended in [the driver's] absence," and "leaving [the van] double-parked" on "a busy commercial [street]" was "untenable." 700 F. Supp. 3d at 78-79; *see also Lyle*, at 729, 731 (holding that it is reasonable for the government to seize and impound a vehicle when the driver cannot

"lawfully drive it away" from the scene, to avoid it remaining in a location "where it could have become a nuisance").

Here, the decision to impound Plaintiff's car was objectively reasonable under the circumstances. First, as Plaintiff notes, he was "parked in a public area" and no third party was available to safeguard his car as his passenger, who was the only potential option, "lacked a valid driver's license." (Compl. ¶¶ 37, 44). Indeed, Sgt. Planeta's request that Plaintiff's passenger drive the car helps underscore that the vehicle's seizure was undertaken to ensure public safety. Second, because Plaintiff's car was double-parked, leaving it unattended on a busy commercial street, in the middle of the day, for an unknown period of time would pose an "untenable" nuisance and a violation of traffic laws.

Finally, even assuming *arguendo* that Sgt. Planeta did fail to follow standard impound procedures, (*see* Compl. ¶ 45), this would not vitiate the impoundment's reasonableness as officers are not required to use a standardized impoundment procedure, *see Lyle*, 919 F.3d at 731.

Thus, the impoundment of Plaintiff's car was objectively reasonable and Plaintiff's claim for unlawful seizure of property must be dismissed.

## POINT VI

## PLAINTIFF'S FAILURE TO INTERVENE CLAIM MUST BE DISMISSED

To state a claim under § 1983 for failure to intervene, a plaintiff must plausibly allege that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd*, 461 F. App'x 18 (2d Cir. 2012).

Where there is no underlying constitutional violation, a plaintiff's failure to intervene claim fails. *See e.g., Matthews v. City of New York*, 889 F. Supp. 2d 418, 444 (E.D.N.Y. 2012) (collecting cases). Likewise, a failure to intervene claim premised on an underlying claim for which probable cause provides a complete defense cannot stand where probable cause exists. *See Gerasimou*, 2022 U.S. Dist. LEXIS 6211, at *13.

Here, Plaintiff's claim fails for at least two reasons. First, to the extent that Plaintiff cannot establish an underlying constitutional violation, Plaintiff's failure to intervene claim fails and must be dismissed. Second, Plaintiff's Complaint demonstrates that neither Defendant Moscoso nor Hossain personally observed Sgt. Planeta's conduct leading up to his arrest. Although Plaintiff alleges in a conclusory fashion that Defendants Moscoso and Hossain "were present at the scene and witnessed" Sgt. Planeta "stop, detain, and arrest" him, this allegation is belied by Plaintiff's prior assertions that Defendants Moscoso and Hossain only "arriv[ed]" in response to Plaintiff "call[ing] 911 at least seven times" to verify Sgt. Planeta's identity after Sgt. Planeta stopped Plaintiff and "approached [his] driver-side window." (*See* Compl. ¶¶ 37-41; 50-h transcript at 22, 26). Thus, Defendants Moscoso and Hossain could not have had a "realistic opportunity" to prevent Plaintiff's stop and or have any reason to suspect Sgt. Planeta's purported racial profiling of Plaintiff. Thus, Plaintiff's failure to intervene claim must be dismissed. *See e.g., Case v. City of New York*, 233 F. Supp. 3d 372, 403 (S.D.N.Y. 2017) (dismissing a failure to intervene claim in relation to false arrest where, *inter alia*, defendant officers "did not personally observe the conduct leading up to arrests"); *see also Gerasimou*, 2022 U.S. Dist. LEXIS 6211, at *13 (dismissing failure to intervene claim in relation to seizure of plaintiff's vehicle).

## POINT VII

## PLAINTIFF'S EQUAL PROTECTION CLAIM IS DEFICIENT AND SHOULD BE DISMISSED

The Equal Protection Clause of the Fourteenth Amendment provides, in relevant part, that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This provision is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To state a race-based claim under the Equal Protection Clause, "'a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race.'" *Greene v. City of New York*, No. 08-CV-243 (AMD) (CLP), 2017 U.S. Dist. LEXIS 37243, at *86-87 (E.D.N.Y. Mar. 15, 2017) (quoting *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000)), *aff'd*, 742 F. App'x 532 (2d Cir. 2018) (summary order).

A Plaintiff may claim a deprivation of equal protection through selective enforcement or on the basis that a law, statute, or policy discriminates expressly or in its application against a suspect class. Here, Plaintiff fails to do either.

### A. Plaintiff Fails To State A Selective Enforcement Claim.

A plaintiff may establish an equal protection violation based on a claim of selective enforcement by "prov[ing] that (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019).

When evaluating a selective enforcement claim, '"the first question that must be asked is whether the plaintiff has proffered a sufficient comparator."' *Thomas v. Genova*, 698 F. Supp. 3d

493, 512 (E.D.N.Y. 2023), *aff'd as amended*, No. 23-7452, 2025 U.S. App. LEXIS 4154 (2d Cir. Feb. 24, 2025) (citations omitted). Although they need not be '"identical,"' the '"plaintiff's and comparator's circumstances must bear a reasonably close resemblance."' *Id.* Courts throughout this circuit routinely dismiss complaints where plaintiffs fail to allege disparate treatment or only make conclusory references to unspecified similarly situated persons without accompanying examples. *See e.g., Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 8 (S.D.N.Y.) (collecting cases), *aff'd*, 705 F. App'x 50 (2d Cir. 2017).

Here, Plaintiff fails to sufficiently identify similarly situated individuals or offer any examples to plausibly suggest disparate treatment. His allegation that "[s]imilarly situated individuals outside of [his] race and ethnic background would not have been subjected to the same level of scrutiny, hostility, and deprivation of liberty" is conclusory. (Compl. ¶ 91). Likewise, Plaintiff's sole potential example—*Mbabuike v. City of New York, et al.*, 153318/2020 (Sup. Ct. N.Y. Cnty.), a case with no reported disposition, purportedly showing that Sgt. Planeta "falsely arrested a Black motorist on unsubstantiated claims about his license plates"—fails to demonstrate disparate treatment and relies entirely on unsubstantiated allegations in that complaint. (Compl. ¶ 89). On this basis alone, Plaintiff's selective enforcement claim fails.

Further, although Plaintiff alleges that Sgt. Planeta has "history of racial discrimination and targeting individuals," he sets forth no facts showing that Sgt. Planeta targeted or treated him differently on the basis of his race in connection with his incident. Thus, for these reasons, and those explained in Point VII.B, *infra*, Plaintiff fails to plausibly allege intentional discrimination. Therefore, his selective enforcement claim fails and must be dismissed.

**B. Plaintiff Fails To State A Claim On The Basis Of A Law, Statute, Or Policy.**

A plaintiff may also plead discrimination in violation of the Equal Protection Clause where they: (1) "point to a law or policy that expressly classifies persons on the basis of race," (2)

"identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner," or (3) "allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000).[7]

Under the second and third scenarios, a plaintiff must plausibly allege not only discriminatory impact, *see e.g., Palmer v. Thompson*, 403 U.S. 217, 224 (1971) (asserting that "no case in this Court has ever held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it"), but also discriminatory purpose, *see e.g., McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (explaining that a plaintiff "must prove that the decisionmakers in *his* case acted with discriminatory purpose") (emphasis in original). As the Supreme Court has made clear, to prove a facially neutral law or policy was motivated by a discriminatory purpose, it is not enough to show that the government took an action with knowledge that it could—or even would—have discriminatory consequences. Rather, the government must have desired to cause those discriminatory results. *See e.g., Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (explaining that discriminatory purposes "implies more than intent as volition or … awareness of consequences. It implies that the decisionmaker … selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group") (citations omitted); *see also Alharbi v. Miller*, 368 F. Supp. 3d 527, 563 (E.D.N.Y. 2019), *aff'd in part, dismissed in part,* 829 F. App'x 570 (2d Cir. 2020).

Here, to the extent that the Complaint is interpreted as raising a claim under the second or third scenarios, Plaintiff's claim fails for at least two reasons. First, Plaintiff's claim fails because

[7] Plaintiff does not allege a claim under the first scenario.

he does not specifically identify a specific statute, law, or policy, let alone one that discriminates in its application, which is fatal. *See e.g., Udoh v. N.Y.C. Dep't of Prob.*, No. 24 Civ. 03982 (ER), 2025 U.S. Dist. LEXIS 148391, at *26 (S.D.N.Y. Aug. 1, 2025) (dismissing Equal Protection Clause claims where the plaintiff did "not point[] to a statute or policy that was discriminatory.").

Second, even assuming Plaintiff's general references to the City's "policies" of "tolerat[ing] and encourage[ing] racial profiling, selective enforcement, and discriminatory policing practices" sufficiently identify a policy, his claim still fails. (*See* Compl. 92). Plaintiff does not plausibly allege that Sgt. Planeta—the decisionmaker in his case—had any involvement in creating those City policies or that they were implemented by Sgt. Planeta for the purpose of discriminating against Plaintiff on the basis of his race.

Thus, because Plaintiff fails to plausibly allege that any law or policy had a sufficiently discriminatory purpose, Plaintiff's equal protection claim must be dismissed.

## POINT VIII

## PLAINTIFF'S TITLE VI CLAIM SHOULD BE DISMISSED

Section 601 of Title VI of the Civil Rights Act ("CRA") of 1964 provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

To state a claim under Title VI, a plaintiff must show that: (1) the Defendant "received federal financial assistance," (2) Plaintiff "was an intended beneficiary of the program or activity receiving the assistance," and (3) the Defendants "discriminated against [Plaintiff] on the basis of race, color, or national origin in connection with that program or activity." *Brannon v. Delta Airlines, Inc.*, 434 F. Supp. 3d 124, 138 (S.D.N.Y. 2020). Here, even if the City is considered a

"program or activity,"[8] Plaintiff fails to plausibly allege that he was an intended beneficiary or that he was intentionally discriminated against.

**A. Plaintiff Is Not An Intended Beneficiary Under Section 601.**

To plausibly state a claim under Title VI, a plaintiff must be the "intended beneficiary" of, an applicant for, or a participant in a federally funded program or activity receiving assistance. *Brannon v. Delta Airlines, Inc.*, 434 F. Supp. 3d 124, 138 (S.D.N.Y. 2020); *see Guichardo v. Langston Hughes Queens Libr.*, No. 15-CV-2866 (MKB), 2015 U.S. Dist. LEXIS 157894, at *17 (E.D.N.Y. Nov. 20, 2015) (dismissing Title VI claim where plaintiffs "fail[ed] to allege that they were the intended beneficiaries of any federally-funded program or activity."). Here, Plaintiff makes no attempt to allege that he was an intended beneficiary of any federally-funded program or activity. Thus, on this basis alone, Plaintiff's Title VI claim fails and must be dismissed.

**B. Plaintiff Fails To Plausibly Allege Intentional Discrimination.**

Like a claim for violation of equal protection, Section 601 "only prohibits intentional discrimination." *New York Urb. League, Inc. v. State of N.Y.*, 71 F.3d 1031, 1036 (2d Cir. 1995) (citing *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 610-11 (1983)); *see also Seabrook v. City of New York*, 509 F. Supp. 2d 393, 406 (S.D.N.Y. 2007). To state a claim for discrimination under Title VI, plaintiffs must allege, "through specific factual allegations," *Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, 527 F. Supp. 3d 625, 632 (S.D.N.Y. 2021), *aff'd,* No. 21-1642, 2022 U.S. App. LEXIS 6208 (2d Cir. Mar. 10, 2022), "that the defendant discriminated against [him] on the basis of race, that that discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions." *See Tolbert*

---

[8] *See e.g., Arroyo v. N.Y. State Ins. Dep't*, No. 91 Civ. 4200 (MBM), 1995 U.S. Dist. LEXIS 15376, at *23 (S.D.N.Y. Oct. 16, 1995) (explaining why refusing to consider the City a "program or activity" is "faithful with to the intent of the statute's framers") (citations omitted).

*v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (internal citations omitted); *see also Kelly v. Rice*, 375 F. Supp. 2d 203, 208–09 (S.D.N.Y. 2005) (dismissing Title VI claim where the plaintiff, *inter alia*, failed to demonstrate how she was excluded from the federally-funded program or activity);

Here, Plaintiff not only fails to plausibly allege intentional discrimination, but also does not even suggest—as required under Section 601—what programs, services, or benefits he was excluded from or denied in relation to the "policing, training, and community safety initiatives" that he cites. (*See* Compl. ¶ 131). Further, even if exclusion from or denial of a benefit could be inferred, Plaintiff's claim still fails because he does not plausibly allege that the City had any actual knowledge of similar discrimination or was deliberately indifferent to it. *See Plaintiffs v. Cty. of Suffolk*, No. 15-CV-2431 (WFK) (LB), 2021 U.S. Dist. LEXIS 266386, at *28 (E.D.N.Y. Aug. 4, 2021) (explaining that a municipality cannot be liable under Title VI "unless it had actual knowledge of discrimination and was deliberately indifferent to it."). The only example Plaintiff invokes to suggest knowledge or notice, *Goris v. City of New York et al.*, No. 08-CV-4186 (E.D.N.Y. 2018), is inapposite, as it concerned alleged NYPD employment discrimination against Sgt. Planeta, not discriminatory traffic stops or racial profiling as Plaintiff alleges here. Further, under the terms of *Goris*'s settlement, Sgt. Planeta was expressly released "from any and all claims, liabilities or causes of action."[9]

Thus, because Plaintiff fails to plausibly allege intentional discrimination by way of exclusion or denial from a federally-funded program or activity, Plaintiff's Title VI claim fails and must be dismissed.

[9] *See Goris*, No. 08-CV-4186, ECF No. 4.

## POINT IX

## PLAINTIFF'S *MONELL* CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED

As an initial matter, Plaintiff's municipal liability claim should be dismissed because the Complaint fails to allege an underlying violation of the Plaintiff's constitutional rights. However, in the event the Court disagrees, Plaintiff fails to allege a viable claim against the City under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), because, *inter alia*, he fails allege facts showing both the existence of a municipal policy or custom and that such policy was the proximate cause of an alleged constitutional violation. *See Cash v. Cnty. of Erie*, 654 F.3d 324, 342 (2d Cir. 2011) ("'[P]roximate cause,' although derived from tort law, fairly describes a plaintiff's causation burden with respect to a municipal liability claim under § 1983."). Conclusory allegations that a municipality has a custom or policy that caused a constitutional are insufficient and warrant dismissal. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

A plaintiff must demonstrate that the municipal "policy" at issue was the "moving force" behind his injuries. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). As the Supreme Court has made clear, "the identified deficiency . . . must be closely related to the ultimate injury." *Id.*; *accord Anonymous v. City of Meriden*, No. 10-CV-37 (MPS), 2013 U.S. Dist. LEXIS 72678, at **14–16 (D. Conn. May 22, 2013). "The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between the [policy] alleged, and the particular constitutional violation at issue." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, n.8 (1985); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (citations omitted).

Here, Plaintiff appears to proceed on two theories of *Monell* liability: (1) the existence of "*de facto* policies" or "customs," Compl. ¶ 113; and (2) and deliberate indifference due to a failure to train, supervise, and discipline. ¶ 114. Both theories fail to support Plaintiff's claims.

**A. Plaintiff Failed To Establish An Underlying Constitutional Violation.**

For a *Monell* claim to succeed, a plaintiff must first plead facts and present evidence showing an underlying violation of his constitutional rights. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). As explained in Points I-VIII, *supra*, Plaintiff cannot establish an underlying constitutional violation, which is fatal to his *Monell* claim.

**B. Plaintiff Fails To Establish A *De Facto* Policy Or Practice.**

Plaintiffs also fails to establish a *de facto* policy or practice. "To demonstrate the existence of a *de facto* policy or custom through a widespread practice, a plaintiff must allege the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively sanctioning or approving the conduct." *Sauer v. Town of Cornwall*, No. 20 Civ. 4881 (NSR), 2022 U.S. Dist. LEXIS 179284, at **15–16 (S.D.N.Y. Sep. 30, 2022) (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)).

Courts throughout this Circuit routinely dismiss complaints that attempt to establish a widespread practice by citing to prior actions that have "settled short of adjudication on the merits" or consist of only "unsubstantiated allegations in lawsuits and complaints." *See McLennon v. City of New York*, 171 F. Supp. 3d 69, 96 (E.D.N.Y. 2016) (collecting cases); *see also McCrae v. Town of Brookhaven*, 759 F. Supp. 3d 372, 400 (E.D.N.Y. 2024); *Iosilevich v. City of New York*, No. 22-CV-3714 (RPK) (LB), 2024 U.S. Dist. LEXIS 178098, at *25 (E.D.N.Y. Sep. 30, 2024). Similarly, a plaintiff's allegations that do not show that their alleged constitutional deprivations are consistent "with a larger pattern of similar conduct" are commonly "disregarded." *Iosilevich*, 2024 U.S. Dist. LEXIS 178098 at *25 (quotation marks and citations omitted).

Here, Plaintiff's allegations regarding a *de facto* policy or custom appear in his Complaint at ¶¶ 113-19, but do not detail the City's efforts to consider and implement new policies surrounding traffic stop tactics where vehicles are unlawfully double-parked or display license plates that appear forged. Indeed, Plaintiff's allegations fail to support a plausible inference of deliberate indifference. *See also infra* at Point IX.C.

Plaintiff also fails to point to any other instances of alleged misconduct that support an inference of a widespread practice. Indeed, fatal to Plaintiff's *Monell* claim is that neither of the two actions he cites—*Goris*, No. 08-CV-4186 (E.D.N.Y. 2018) and *Mbabuike*, 153318/2020 (Sup. Ct. N.Y. Cnty.)—resulted in admissions or findings of liability. Further, only one is factually similar to Plaintiff's alleged experiences, which, is insufficient to establish a *de facto* practice or custom, even if it resulted in a finding of liability. *See e.g., Nunez v. City of New York*, 735 F. App'x 756, 760 (2d Cir. 2018) (quotations omitted) (affirming dismissal of *Monell* claims where plaintiff had cited 48 instances of prosecutorial misconduct over 23 years).[10] Thus, Plaintiff's *de facto* theory of liability fails.

**C. Plaintiff Fails to Demonstrate Deliberate Indifference.**

Plaintiff's *Monell* claim also fails under a deliberate indifference theory. A "failure to train . . . employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). However, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal

---

[10] *See also Calderon v. City of New York*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015) (16 lawsuits over 12 years in New York City were inadequate to plead a municipal custom); *Tieman v. City of Newburgh*, No. 13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *50 (S.D.N.Y. Mar. 26, 2015) (13 allegations of thirteen instances "of excessive force during arrests over four years . . . during which hundreds, if not thousands, of arrests were made does not plausibly demonstrate" a widespread practice); *Walker v. City of New York*, No. 12 Civ. 5902 (PAC), 2014 U.S. Dist. LEXIS 42272, at **6–7 (S.D.N.Y. Mar. 18, 2014).

organization where that organization's failure to train . . . led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." *Connick*, 563 U.S. at 68.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61; *accord Boddie v. City of New York*, 15 Civ. 4275 (GHW), 2016 U.S. Dist. LEXIS 50248, at *11 (S.D.N.Y. Apr. 13, 2016). "A training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007). To plausibly allege a failure to train claim, a plaintiff must "'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'" *Iosilevich*, 024 U.S. Dist. LEXIS 178098, at *25 (citations omitted).

A failure to supervise and a failure to discipline claim require a plaintiff to plausibly allege that the city was "faced with a pattern of misconduct and [did] nothing, compelling the conclusion that the [city] has acquiesced in or tacitly authorized its subordinates' unlawful actions," *see Reynolds*, 506 F.3d at 192-93 (noting that a plaintiff is also required to identify "severe deficiencies" in the "defendants' supervision"), such that "that the need to protect against constitutional violations was obvious," *see McCrae*, 759 F. Supp. 3d at 399 (citations omitted).

Here, Plaintiff fails to identify a specific deficiency in the City's training program, identify a specific deficiency in the City's supervision, or adequately allege an obvious pattern of misconduct that could plausibly support liability for deliberate indifference. Indeed, other than the

alleged misconduct that Plaintiff claims he experienced, his Complaint includes no factual support that the City failed to adequately train, supervise, or discipline.

As explained in Point IX.B, *supra*, Plaintiff's reference to two other cases, neither of which resulted in liability, are insufficient to plead a pattern of misconduct against the City. Likewise, Plaintiff's reference to "internal reports detailing systemic misconduct within the NYPD" is both conclusory and vague, and does not indicate that either report caused him to suffer a violation of his constitutional rights in this case or that the need for better supervision was obvious. *See* Compl. ¶ 117; *see also Boddie*, 2016 U.S. Dist. LEXIS 50248, at *13–14 ("A report recommending improvements to an existing training program . . . does not, without more, give rise to a plausible inference of deliberate indifference on the part of the City.").

Additionally, a municipality must be on notice that its training is resulting in constitutional violations. *See Connick*, 563 U.S. at 62; *Pluma v. City of New York*, No. 13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134, at **35–36 (S.D.N.Y. Mar. 31, 2015) (holding that a "handful of dissimilar incidents occurring over the course of more than a decade is too sparse to put the City on notice that the NYPD's training program produces officers who are likely to commit constitutional violations"); *see also Boddie*, 2016 U.S. Dist. LEXIS 50248, at *13 (small number of dissimilar incidents alleged does not support deliberate indifference). Here, given the small number of alleged—and unproven, dissimilar—incidents that Plaintiff cites to as purported misconduct, his claim also fails the notice requirement. Thus, Plaintiff fails to state a deliberate-indifference *Monell* claim.

## POINT X

## THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[11] *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established only when a plaintiff can point either to "cases of controlling authority in [the] jurisdiction at the time of the incident" or to a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Ashcroft v. al-Kidd*, 563 U.S. 73, 735 (2011) (quotation omitted). Clearly established law should not be defined "as a high level of generality," *id.* at 742, but instead must be "'particularized' to the facts of the case,'" *White v. Pauly*, 580 U.S. 73, 78 (2017) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Supreme Court has established that "[t]he qualified immunity standard 'gives ample room for mistaken judgements' by protecting 'all by the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S.  224, 229 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Even where the plaintiff's federal rights … are clearly established, the qualified immunity defense protects a government actor if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (internal quotation marks omitted).

"In practice, this means that [o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Roberts v. City of New York*, No. 16 Civ. 5409 (BMC), 2017

[11] Qualified immunity applies equally to state law as well as federal claims. *See Concepcion v. City of New York*, No. 15-CV-4844 (AMD) (LB), 2019 U.S. Dist. LEXIS 76601, at *14 (E.D.N.Y. May 6, 2019) (citations omitted).

U.S. Dist. LEXIS 160979, at *18 (E.D.N.Y. Sep. 29, 2017) (citations omitted). Because qualified immunity requires that the officer had fair notice that her conduct was unlawful, "reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (U.S. 2004). "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id.*

Qualified immunity provides immunity from suit rather than just a defense to liability. *See, e.g.*, *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016). That "benefit is effectively lost if a case is erroneously permitted to go to trial." *Id.* Therefore, it is necessary that qualified immunity questions "be resolved at the earliest possible stage of litigation." *Id.* (quotation omitted).

**A. Arguable Probable Cause Supported Plaintiff's Arrest.**

An officer is immune from a false arrest claim if there was arguable probable cause to arrest. *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013). Immunity attaches if "(a) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quotations omitted). To determine whether an officer's conduct was objectively reasonable, courts "look to the information possessed by the officer at the time of arrest." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quotations omitted).

At the time of the alleged incident, there was no Supreme Court or Second Circuit law holding that it would be constitutionally impermissible for officers to seize an individual where they directly observed them violating traffic laws or possessing what appeared to be forged license plates based on their physicality. *See e.g., Gerasimou v. Cillis*, No. 15-CV-6892(EK)(VMS), 2022 U.S. Dist. LEXIS 6211, at *8 (E.D.N.Y. Jan. 12, 2022) (holding that defendants "had at least arguable probable cause to arrest Gerasimou for possession of a forged instrument" based on the

physicality of the plaintiff's license plate). Thus, at a minimum, officers of reasonable competence could disagree on whether the probable cause test was met. Therefore, Defendants are entitled to qualified immunity on Plaintiff's false arrest claims.

**B. Arguable Probable Cause Supported Plaintiff's Prosecution.**

Similarly, arguable probable cause also entitles officers to qualified immunity on malicious prosecution claims, unless the plaintiff "can identify some fact that came to the attention of the police before the commencement of his prosecution that was sufficient to 'dissipate' the probable cause that existed at the time of his putative arrest." *Keith v. City of New York*, 641 F. App'x 63, 67-68 (2d Cir. 2016) (citations omitted).

As explained in Points II.B and III.A, *supra*, Sgt. Planeta had probable cause, if not at least arguable probable cause, to arrest Plaintiff for possession of a forged license plate based on the physicality of the license plates and conversations with Plaintiff. As also explained in Point III.A, *supra*, beyond conclusory allegations that exculpatory evidence purportedly existed, Plaintiff does not actually allege that either Sgt. Planeta or Detective Bolger received any exculpatory information or that such information was presented to anyone prior to the commencement of his prosecution. *See Gil v. Cnty. of Suffolk*, 590 F. Supp. 2d 360, 370 (E.D.N.Y. 2008) (explaining that "officers with probable cause to arrest are also entitled to qualified immunity as to malicious prosecution claims, because after arrest the matter is in the hands of the prosecutorial authorities making the decision to continue with the prosecution and outside of police discretion") (citations omitted). Therefore, Defendants are also entitled to qualified immunity on Plaintiff's malicious prosecution claims.

**C. Defendants Are Entitled To Qualified Immunity From Plaintiff's Abuse Of Process Claim.**

The individual Defendants are further entitled to qualified immunity with respect to Plaintiff's abuse of process claim as arguable probable cause existed for Plaintiff's arrest. *See Jackson v. Suffolk County*, 87 F. Supp. 3d 386, 410 (E.D.N.Y. 2015) (granting qualified immunity on abuse of process claim the ground that "at the very least, 'officers of reasonable competence could disagree on whether the probable cause test was met,'" and noting that "numerous district courts in this Circuit have suggested that probable cause is a complete defense to a claim for abuse of process.") (citations omitted); *see also Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 959 (2d Cir. 2015).

**D. Sgt. Planeta is Entitled To Qualified Immunity From Plaintiff's Seizure Of Property Claim.**

Sgt. Planeta's conduct in seizing and impounding Plaintiff's car is also shielded by qualified immunity as it did not violate any clearly established law and was reasonable. As courts in this Circuit have explained, '"[n]either the Supreme Court nor the Second Circuit has definitively addressed the issue as to whether and under what circumstances vehicle impoundments for traffic infractions violate the Fourth Amendment."' *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 299 (S.D.N.Y. 2020) (citations omitted). Likewise, it would not be clear to a reasonable officer that Sgt. Planeta's conduct was unlawful in the situation he confronted as Plaintiff's car was double-parked in a busy commercial street and leaving it there would pose a risk to public safety. *See id.* (noting that an officer's belief that he was authorized to remove a car in violation of traffic laws entitles him to qualified immunity). Therefore, Sgt. Planeta is entitled to qualified immunity from Plaintiff's unlawful seizure of property claim.

**E. Arguable Probable Cause Defeats Plaintiff's Failure To Intervene Claim.**

An officer's "awareness of 'arguable' probable cause will entitle him to qualified immunity" in relation to a failure to intervene claim. *Gerasimou*, 2022 U.S. Dist. LEXIS 6211, at

*12. Here, because arguable probable cause existed to arrest Plaintiff, and the seizure of Plaintiff's vehicle was reasonable and did not violate any clearly established law, Defendants Moscoso and Hossain are entitled to qualified immunity.

**F. Sgt. Planeta Is Entitled To Qualified Immunity From Plaintiff's Claims Of Equal Protection Violations.**

A defendant is entitled to qualified immunity from an equal protection violation claim where a plaintiff does not plausibly allege that defendants intentionally discriminated against him on the basis of race, that he was treated differently from similarly situated individuals, or that his treatment was based on impermissible considerations related to his race. *See Thomas*, 698 F. Supp. at 520 (E.D.N.Y. 2023) (granting qualified immunity against selective enforcement claim); *see also United States v. City of New York*, 717 F.3d 72, 94 (2d Cir. 2013) (granting qualified immunity against claim in relation to application of facially neutral policy). Here, because Plaintiff fails to plausibly allege intentional discrimination, that he was treated differently from similarly situated individuals, or that his treatment was based on his impermissible considerations related to his race, Sgt. Planeta is entitled to qualified immunity as his conduct does not violate any clearly established law.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that this Court dismiss the Complaint with prejudice, and order any other and further relief that it deems just and proper.

**CERTIFICATION**

In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 11,246. I have relied on the word count function of Microsoft Word to prepare this certification.

Dated: New York, New York
September 04, 2025

**MURIEL GOODE-TRUFANT**
Corporation Counsel of the City of New York
*Attorney for Defendants City of New York, Planeta, Bolger, and Moscoso.*
100 Church Street
New York, New York 10007
T: (212) 356-1643

By: Michael Futral /s/
Michael Futral, Esq.
*Assistant Corporation Counsel*
Special Federal Litigation

Cc: Charles Saldarriaga
1-20 Astoria Blvd., Apt. 4H
Astoria, NY 11102
*Pro se Plaintiff*